Case No. 20-5144. Jens Porup, Appellants v. Central Intelligence Agency. Mr. McClanahan for the Appellant. Mr. Hendel for the Appellant. All right. Good morning, Mr. McClanahan. Before you begin, I understand from the clerk that you may have some technical problems, and if we lose you, we'll just take the rest of your argument on the brief. Thank you, Your Honor, but I don't expect any technical problems. I was just telling her that if in the off chance there are technical problems, I might not be able to connect that. All right. Please proceed. Ladies and gentlemen of the court, my name is Kel McClanahan. I am here to argue for Plaintiff Jens Porup. This is a fairly straightforward case of what rules of evidence apply and how a statute is interpreted. No matter how many things are thrown into the mix, that's really what it boils down to, and there are a lot of issues that were in the briefs, and that were, especially if you listen to the CIA's argument, were in the briefs below that were not passed upon below, but I'm going to stress two major things. Well, three if you can't one being split in two. The first one is sort of the elephant in the room, and that is the issue of whether or not CIA has proven that its alleged policy has mooted the case, its new policy. This practice, this internal guidance that officers should not decline, quote unquote, to process records that are based on the fact that they are allegedly beyond the scope of the CIA's mandate. We believe that even under the best interpretation of the facts, this has not met the fringe of the earth mootness test that, you know, as the Supreme Court said, has to say that subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. That is not anything that has been met here. The counsel for the other side assures us that that's what they meant to say today, and that's in an opinion, but wouldn't that be the end of it? Your Honor, I don't believe so, because the counsel cannot testify, and the counsel cannot provide evidence, and the only evidence in the record is this declaration that cherry-picked from an alleged policy that even according to their counsel may or may not even be written, and they're basically just asking you to take their word for it, and that gets to the second point of FOIA is kind of a unique animal in litigation, where it doesn't generally go to trial, it doesn't generally go to discovery, and... Can I ask you, suppose the policy were firm and definite, what the the stated, the stated policy, new policy, and the Shiner Declaration were firm and definite, would that then moot the case? I think we would concede that. It seems like the new policy is significantly different from what you allege, and at least in my view, would pretty clearly be lawful. Yes, Your Honor. So the whole case, just on this point, comes down to whether, whether the statement, whether the policy was stated in sufficiently mandatory terms, and whether Ms. Shiner has sufficient authority and gravitas to speak for the government on that point, correct? Well, that's one of the points, Your Honor, and, but yes, to, to your statement, if they introduced through admissible evidence that the existence of a definite policy that would say that this is not left up to the discretion, this is not something that the processers should or should not do, as you characterize it, then yes, we would admit that that, that moots the point, and in fact, we said that in the district court. So, so speaking of cherry-picking then, when you look at the entire declaration, you focus on a couple of words which might or might not be mandatory in isolation, you know, there's a should, for instance, but there are, there are a lot of mandatory verbs in the overall description of the policy, instructed required mandates. Isn't the most fair reading of that entire paragraph is that this is a, this is a binding rule going forward? I don't believe so, Your Honor. Our position is that the, the things that are mandatory are conditional, that they mandate that a FOIA processor consider whether or not they should refuse to process a request. Yes, it is mandatory that they, according to a, a generous reading of this, they are, in fact, we would concede that if this policy is as characterized, they are required to follow this policy. However, that's like saying that I am required to think about what I will say before I say it. It doesn't say what I have to say. Because required is too amorphous, or because the requirement itself is only to make an assessment case by case, and that's not firm enough. That, that latter point, Your Honor, that is our point that the requirement is that they seriously think about whether or not they should do it, and they are discouraged from doing it, but they are still free to do it on a case by case basis. Would it be unlawful? Suppose the um, covert operations to secure passage of the Affordable Care Act. Could they lawfully just say, look, that's crazy. We don't do that stuff. We've never done that stuff. We're just not going to make that search. They are not allowed to not search. What they are allowed to do is process. How far afield the request is from anything that they ever have done or could do. They always have. Now, what they can do, if they can say that the request does not reasonably describe records that they would have, they can say that it would be unduly burdensome. They can say that, you know, we, we could not determine where to search because we don't do this sort of thing. They can do the things that they do all the time, and some maybe even do a search for Affordable Care Act and the Office of Congressional Affairs or something. What they can't do is say, we're not going to do it because we don't do that. They're required to process a FOIA request. No, but the fair reading of the policy is they make a case by case judgment about whether there's any reasonable possibility that the search will produce responsive records. And if the answer to that question is obviously enough, no, then they don't do the search. Your Honor, I would take a little bit of issue with that characterization, but I'm trying to find the exact policy statement that they quoted. What I have in my notes is they're required to assess case by case whether agency records are likely to contain responsive material. And that just, that seems to me okay as an abstract statement. Well, and again, this court may rule that way. We would maintain that they are, that FOIA requires them to process a FOIA request unless it is unduly burdensome or does not request, describe the record salt or that it is the records are exempt. That is it. FOIA is straight up about what you can and can't do. And this is not something you'd be creating new law. Even if, even if it's with respect to a matter that they have no engagement with whatsoever. This happens all the time, for instance, in the CIA. They get a request to know what was the, who was considered, who did the Washington football team consider in recent drafts and that you want all the information they have on that? They've got to search. They can, they don't have to search, let me make sure I understand what you're saying. If they get something that's patently absurd, and I happen to think my hypothetical raises a patently absurd situation, they want all the information the CIA has on Washington football teams, private discussions on who to draft. They can't say we don't do that. They can say that we can't construct a record, which is not what they're doing. They're just saying. So there are some things that are just patently absurd. They can say that's that we can't even get started on that. That's that's beyond the pale for us. Okay. However you want to put it. So we agree on that. No, your honor, we do not agree that they simply tell me what they would be legal in your view, what they would legally be required to do with the Washington football team requested search. They would be required to do what the NSA does when they're asked about people who have microchips implanted in their bodies. They would have to say, we could not determine where to search. They would have to say, this is an unduly burdensome search because we would have to search every record to find this needle in a haystack if it exists, or they would have to conduct a search of some office knowing that the result would be no, and then say, we had no records. This is what the intelligence agencies deal with every day. Okay. All right. And, and, and to get to a different point, because I'm about to run out of time, I did stress that it's through admissible evidence, because FOIA doesn't go to trial, the application of the rule that the best evidence rule doesn't apply in summary judgment makes it nonsensical. Because as I said, in my brief, and I'll just sort of very briefly rehash the, an agency can, as I said before, cherry pick whatever it wants from a policy statement, and then cherry pick it again, and then cherry pick it again. I'm not understanding along the lines of my colleague. They said they shall not agency personnel should not decline to process requests solely because it matters that issue are beyond the scope of the agency's primary mission, which is what you wanted, except you don't like should not decline. You want will not decline. Is that right? Or shall not decline. Yes. But yeah, I would, I would take will. All right. So if you had shall or will, it's move, right? If they can prove it, and this gets back, wait, let me let me do it a step at a time. Okay, indulge me. If you had shall or will, it's move, right? If, are we setting aside whether or not it's admissible, then yes. If we had a policy statement, for instance, that said that policy statement that said, or was the equivalent of shall or will, it's move, right? Correct. All right. Let me ask you my question again, which is what I started out with. If counsel for the other side says, my assurance and pursuant to all of my ethical obligations, I can assure you that that is the agency's position. And we write that in an opinion and say the agency's position, the words seem a little loose here or there, but it is a shall. And we, the court are saying that's the mandate. What's left? We've done this before. That's the end of it. You have an enforceable mandate. You're in no worse position than if you had shall or will in the written policy and they don't follow it the way you want. You have a mandate and you'd have to come back in either case. If we say in our opinion, counsel has assured us that they meant to moot the case by granting the policy as requested. It's done. Case is over, right? If you say that, that is a different thing. Well, that's what I asked you to start it out because it seemed so obvious to me. That was my first question to you and you resisted. Sorry, go ahead. I said, if I asked counsel, he may not say that, but if I asked counsel, is he assuring me the way pain and friends of the earth are requiring that this is done? And I, we write it in an opinion, it's done. Is it done? If you write it in an opinion, I would argue that it's close to done, but I don't think he can say that any more than why would you take his word over mine? Because you cannot take the word of a counsel because he's an attorney and he's appearing before the court and he has certain ethical responsibilities. He may not understand the entire scope of it. It, it, it, this is why lawyers aren't allowed to be fact witnesses. Okay. I got, I got your point. All right. Judge Kansas. Do you have any questions? I'm all set. No, right. Your time is up. We'll give you a couple of minutes, Mr. Handel. Good morning, your honors. And may it please the court, Josh handle on behalf of the central intelligence agency. What's the answer to my question council judge Edwards? So, so just, just to make sure that I'm clear, your question is, do we understand this policy to be binding on CIAs processors? And the answer is yes. And I believe that. So let me just take the words that at least leap out pretty straightforwardly. Agency personal should not decline to process requests solely because the matters at issue are beyond the primary mission, which is the fight here. I'm asking you as counsel for the agency. Is it your understanding that the government's position on this is that that's mandatory? Yes, your honor. Okay. That's all I wanted to know. And, you know, just to perhaps gild the lily a bit here. We think that that's reflected in other pieces of the description. I understand you understand the point he's made there. There's loose language here or there, but I still can ask you because there's enough for me in my mind to ask you the question. Is it your understanding? Because if that is captured in an opinion, then you, you and the agency have new responsibilities because it would be captured pursuant to your assurance that the policy is mandatory. And that means it would have to be mandatory going forward. Yes, your honor. I understand that that, that this policy was communicated to processors as CIA's understanding of its obligations under FOIA and as such is mandatory on the agency by operation of statute and mandatory on CIA's employees by operation of the employer employee relationship. I think the, the should shall distinction in language is just explicable through the fact that CIA was not engaged in lawmaking here. It was just giving an internal directive to its employees. And I think that that's a fairly normal way for an employer to speak to its employees. But under pain, I mean, we went through this back and forth in the pain case. It's perfectly fair for the other side to ask the agency or to be sure that the person who's giving this assurance really has the authority to do it. And that it really is an assurance. That's a perfectly fair question. And that's what I'm your honor. And I'm not disagreeing with any of that. I'm just trying to offer kind of the basis for my understanding that this policy is mandatory. I'm happy to answer any other questions that the panel has about other issues in this case. Can I ask you about exemption three? Sure. The district court thought this case was when you take out exemption one exemption six and the CIA act, the district court thought the remaining dispute was about two documents. As I understand it, it's actually about portions of maybe 21 documents. One thing we could do is just remand for the as the path of least resistance. And it gives the first instance court the first shot at this. Sure. Judge Katza. So I think that that would be a purely cosmetic remand because the express rationale underlying the district court's holding was tethered to a representation by Ms. Shiner in the Shiner declaration that we submitted. And that representation covered all of the information withheld by CIA under exemption three in conjunction with the national security act. That was specifically Ms. Shiner's representation as to the harms to national security that would be occasioned by disclosure of this information. The district court correctly noted that Ms. Shiner was making that representation as to all of the information being withheld under exemption three. And the court then cited three decisions of this court, Wolf Sims and center for national security studies for their holdings, directing district courts to extend substantial deference to executive affidavits, predicting harm to national security. So at the end of the day, the district court's holding rested on representations that expressly applied to all of the records withheld or redacted under the national security act. The court's admitted misstatement of the exact number of records implicated by that holding doesn't unsettle the judgment, which was compelled by the court's crediting of Ms. Shiner's prediction of harm. That representation in Ms. Shiner's affidavit has not been controverted at least before this court, it has not been controverted by this court's power and discretion to affirm on that basis. Let me ask you, Mr. Handel, for me, the only even remotely close issue in this case is the segregability. And our court has been on both sides of it. Most recently in, I think Machado Amadeus, we held that we could perform that function. So could you address that? Absolutely, Judge Henderson. So you are correct that the district court did not mention anything about segregability in its summary judgment order. This court has sometimes treated it as reversible error for a district court not to make a segregability finding sua sponte even when, as here, it's not directly controverted between the parties. But as you mentioned, Your Honor, you have also held that it is not necessary to remand solely for that purpose. We cited the Juarez versus Department of Justice case from 2008 on pages 48 and 49 of our brief where this court noted that because its review of summary judgment is de novo, and it has the same record and the same affidavits before it as did the district court, you are just as capable of evaluating the agency's affidavits regarding segregability as was the court below. And I think that's especially appropriate to do when, as here, you have an unrebutted, uncontroverted representation of non-segregability in the affidavit that CIA submitted. And again, Mr. Porup did not dispute that in the district court. He has not offered any reasons to doubt the court. So I think that the Juarez line of cases says that, again, it is certainly within your power and discretion. You want to rest on summary judgment law, that is de novo review. We're doing the same thing the district court would do if we remanded it, is your claim. And we're looking at uncontested material. Am I understanding you correctly? That's correct, Judge Edwards. Yes. All right. So you just want to rest on the standard review. It's our call to make, and we, there's nothing contested here, and we ought to go ahead and make the call. Well, I think here, you know, if you were just going, as you said in the Juarez case, if you were just going to remand for the district court to enter an uncontested segregability finding, that is, you know, just a rote operation of the district court, there's really no reason to prolong the case and go through the whole vehicular and remand procedure. Okay. All right. Unless the court has further questions, I'll rest on my brief and respectfully request that you affirm the judgment below. Thank you. All right. Thank you, counsel. Mr. McLennan, why don't you take two minutes? Thank you. And I will just very quickly jump on the segregability issue just because that proves the point we've been making. The fact that the judge did not enter segregability is a material question as to whether or not, as Mr. Handa was presuming, he was ruling, the district judge was ruling on the entire blanket withholding claimed by CIA or was doing a fact-by-fact document analysis. And this gets back around to the point that I was discussing with Judge Edwards of what can counsel testify to? And counsel is telling you what he thinks the district judge meant. No, no, no. No, that's not the thrust of my question. Under standard law, under standard of review inquiries, we do the same thing the district court does if it's a summary judgment. And if they're simply documents to look at to make the determination, we have some case law that says we can go ahead and make it. That's what you do in summary judgment. We can make this. We don't need, we don't give any deference to the district court's determination if it's a straight up summary judgment matter. And we can look at it and determine whether or not there are material facts in dispute. Right. And I wasn't saying that was what you just said. I'm saying that during my original oral argument, when you and I were discussing the counsel, he's saying, well, it's clear that the judge... No, but the question now on segregability is why would we send it back? Why isn't that something we can do in the context of this case on this record? It's pretty straightforward. You can. And that's not the point I was trying to make. I was trying to show that the lack of segregability, the lack of a segregability finding shows that the district judge did not apply the analysis of the National Security Act to all of the documents in controversy, because if only that would have been an advisory opinion after saying that there are only two documents in controversy. And by the way, I'm going to say that everything else is exempt too. Judges don't do that. I mean, good judges don't do that. And this is a good judge. I'm going to change gears very quickly, just to make a point about the CIA Information Act, before I run out of time. You are out of time, so make it very... Okay. I just wanted to point out that in the House report for the CIA Information Act, it talks about how CIA has to search operational files when CIA conducts an internal investigation of allegations of impropriety or illegality in conduct of an intelligence activity, whether through the Office of the Director, Inspector General, General Counsel, anywhere. It doesn't have to be a congressional committee doing it, and it doesn't have to be a plaintiff pointing out that a secret CIA internal investigation happened. If a CIA internal investigation happened, they have to search operational files for it. And they did not represent that they did. And that by itself is enough to send it back for adequacy search over operational files. If you have any questions, I'm here. Otherwise, I would respectfully request that the court reverse and remand this case to the district court. All right, counsel. The case is submitted. Madam Clerk, will you call the next case?
judges: Henderson, Katsas, Edwards